## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

TRACY ANTHONY MILLER,          :
                                :
                Plaintiff,       :
                                :
v.                              :          Case No. 5:24-cv-199-TES-AGH
                                :
DR. LEO, *et al.*,               :
                                :
                Defendants.      :
_____ :

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Tracy Anthony Miller, a parolee formerly housed in the Bostick Nursing Center in Milledgeville, Georgia, filed a non-prisoner motion for leave to proceed *in forma pauperis*.  Plaintiff's motion (ECF No. 7) is **GRANTED** because his submissions show he cannot pay the Court's filing fee, and his claims are ripe for preliminary review under 28 U.S.C. § 1915(e).  After this review, the following claims raised pursuant to 42 U.S.C. § 1983 shall proceed for further development: (1) claims that Defendants Leo and Mitchell forced Plaintiff to take unnecessary medication in violation of the United States Constitution; (2) claims that Defendants Leo and Mitchell retaliated against Plaintiff in violation of the United States Constitution and the Federal Nursing Home Reform Act ("FNHRA"); (3) claims that Defendants Leo and Mitchell chemically restrained Plaintiff in violation of the FNHRA; and (4) claims that Defendant Mitchell denied Plaintiff visitation in violation of the FNHRA.[1]    It is

---

[1]  The docket in this case shows that an individual named "Colette Lewis" is a Defendant in this

**RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

## PRELIMINARY REVIEW OF PLAINTIFF'S CLAIMS

### I.     Standard of Review

Because Plaintiff is proceeding *in forma pauperis* ("IFP") in this case, the Court conducts a preliminary screening of Plaintiff's complaint in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).   "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."   *Id.* at 1160 (internal quotation marks and citation omitted).   Still, under § 1915(e), a district court must dismiss the complaint if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A claim is frivolous when "it 'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).   The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."   *Id.*   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

action.   It appears this individual's full name is Collette Lewis Mitchell.   *See, e.g.*, Compl. 1, ECF No. 1.   The Clerk is therefore **DIRECTED** to change Defendant Colette Lewis to Defendant Collette Lewis Mitchell on the docket, and this individual will be referred to as Defendant Mitchell in this Order and Recommendation.

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).    The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level[.]"    *Twombly*, 550 U.S. at 555.    In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.    *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."    *Iqbal*, 556 U.S. at 678.

## II.    Factual Allegations

Plaintiff's claims arise from his treatment in the Bostick Nursing Center ("Bostick") in Milledgeville, Georgia.    Compl. 5, ECF No. 1.[2]    Bostick is a nursing facility that houses "elderly and infirm inmates who otherwise might not have a place to go when they're paroled."    Rhonda Cook, *Nursing home for prison inmates opening in Milledgeville*, Atlanta Journal-Constitution (Dec. 19, 2016), https://www.ajc.com/news/local/nursing-home-for-prison-inmates-opening-milledgeville/bxty42FvMBDkO7T8jla8WP/.    Plaintiff is a parolee who was granted clemency by the Georgia Board of Pardons and Paroles on January 18, 2023. Compl. 5.    After his release from prison, Plaintiff was placed at Bostick because "Bostic[k] administration could help get his benefits including Social Security Medicaid and Medicare started[.]"    *Id.*    Plaintiff was discharged from the facility sometime in late July or early August 2024.    *See* Mail Returned, Aug. 27, 2024, ECF

---

[2]   In the caption of his complaint, Plaintiff lists "Bostic Correct Life Entity" or "Bostic Nursing Center Correct Life Entity" as the full name of this Defendant.    Compl. 1, 4.

No. 5.

Plaintiff contends the administrator of Bostick, Defendant Mitchell, runs the facility like a prison even though Bostick is "owned by a private owner with no ties to Georgia Department of Corrections nor the Georgia Board of Pardons or Parole[.]" Compl. 5.   For example, Defendant Mitchell requires residents to quarantine; installed locking doors and unopenable windows in the dorms; requires safety officers to escort residents to and from her office; authorizes searches and seizures of residents' dorms; denies day passes; and maintains inappropriate control over residents' personal funds.   *Id.* at 5, 8-10.   Plaintiff further alleges that he and other Bostick residents have been physically, verbally, and emotionally abused.   *Id.* Among other things, Plaintiff states that Defendant Mitchell and Defendant Leo, the "Medical Director of Mental Health" at Bostick, placed him on psychotropic drugs as a means of "chemical restraint[.]"   *Id.* at 4, 6-8.   In addition to restraining his movement, these drugs caused Plaintiff to fall and suffer injuries.   *See, e.g.*, *id.* at 8. When Plaintiff filed grievances concerning his treatment at Bostick, staff retaliated against him.   *Id.* at 6-8.   He also generally contends that Defendants discriminated against him on the basis of his race and disability.   *Id.* at 10.

In addition to Defendants Mitchell and Leo, Plaintiff sues James Rogan, Bostick's "Medical Director [of] Residents"; Aaron Minniefield, Bostick's CEO;[3] and

---

[3]  Plaintiff spells this Defendant's name "Aaron Minified" in the caption of his Complaint and "Aaron Minniefield" when he lists all Defendants later in his Complaint.   The Court assumes this is the same person.

Bostick itself.    Compl. 4, ECF No. 1.    Though the precise nature of each individual claim Plaintiff intends to bring is unclear, he is generally contending that his treatment at Bostick violated his constitutional rights and other federal laws, relying specifically on 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; and the FNHRA.    *See, e.g.*, Compl. 6.    As a result of these alleged violations, Plaintiff seeks monetary damages and injunctive relief.    *Id.* at 11.

### III.    Plaintiff's Claims

#### A.    <u>Claims against Defendants Minified and Rogan</u>

As a preliminary matter, Plaintiff fails to plead facts associating Defendants Rogan or Minniefield with any of the constitutional or statutory violations he alleges. In fact, Plaintiff does not mention either of these Defendants in the body of his complaint at all.    As such, Plaintiff's claims against Defendants Rogan and Minniefield should be dismissed.    *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).

#### B.    <u>Claims for Injunctive Relief</u>

Plaintiff raises claims for injunctive relief.    Compl. 11.    As noted above, however, Plaintiff has been released from Bostick, and he does not allege that he is likely to be returned to that facility.    "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." *See, e.g.*, *McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984).

To the extent Plaintiff is seeking injunctive relief in this case, his claims are therefore moot and should be dismissed as such.

      C.   <u>Claims against Remaining Defendants</u>

          *1.   Section 1983*

The Court now turns to Plaintiff's remaining claims against Defendants Leo, Mitchell, and Bostick itself.   Plaintiff first seeks relief pursuant to 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).   As noted above, Plaintiff suggests Bostick is privately-owned. Compl. 5.   A private citizen "may be viewed as a state actor under § 1983 '[o]nly in rare circumstances.'"   *Brown v. Lewis*, 361 F. App'x 51, 54 (11th Cir. 2010) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)).   The Eleventh Circuit uses three tests to determine whether a private citizen acts under color of state law for § 1983 purposes:

> (1) the public function test, which asks whether the private actors were performing functions "traditionally the exclusive prerogative of the state;" (2) the state compulsion test, which applies to situations where the government coerced or significantly encouraged the unconstitutional actions at issue; and (3) the nexus/joint action test, which applies where the state and the private party were joint participants in the common enterprise.

*Id.* (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003)).   "A private party may also be held liable under § 1983 when

he conspires with state actors to violate the plaintiff's constitutional rights." *Id.*

In this case, the relationship between Bostick, its employees, and any state entities, such as the Georgia Department of Corrections or the Georgia State Board of Pardons and Paroles, is not clear. But courts have found that entities similar to Bostick are state actors under the "public function" test. One of these courts analogized a private residential treatment center for troubled children to a private prison for purposes of determining whether the center could be a state actor for § 1983 purposes. *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 990 F. Supp. 498, 501-02 (N.D. Tex. 1998). The court observed that the individuals housed in the treatment center and private prisons are placed there involuntarily by the state, and both types of facilities provide "24-hour care of people with behavior problems." *Id.* at 502. In both cases, the state pays for residents' "housing, food, medical, and educational needs[,]" and "residents are not free to choose their own medical care givers, but are forced to receive treatment from whomever has a contract with either the private prison or . . . residential treatment center." *Id.* The court reasoned that a private corporation running a state prison would clearly be considered a state actor "under the 'public function' doctrine." *Id.* at 502. And, because the residential treatment center likewise "assumed the state's total responsibility for the care of troubled juveniles" pursuant to an "extensive contractual relationship" with the state, the center and its contract physician were also state actors. *Id.* at 502-03 (citing *West v. Atkins*, 487 U.S. 42, 50-51 (1988) (physician under contract with state to provide medical care to inmates acts under color of state law for purposes of § 1983 liability));

*see also McBryde v. Thomas*, No. CV 12-76-H-DLC, 2013 WL 6199177, at *5 (D. Mont. Nov. 27, 2013) (finding that a "24-hour residential facility under contract with the State of Montana to house inmates where the inmates/'family members' were not free to leave, were under the 24-hour care and supervision of the staff . . . , were sent to the facility by the state, and were held on an involuntary basis" was state actor); *Braswell v. Cmty. Sols., Inc.*, Civil No. 3:11-CV-01043 (JCH), 2013 WL 663621, at *4 (D. Conn. Feb. 4, 2013) (finding residential work-release center operated by non-profit that contracted with department of corrections was akin to a private prison and therefore was a state actor); *but see, e.g.*, *Moore v. Broady*, No. 10-CV-3250 (ENV), 2010 WL 3125008, at *5 (E.D.N.Y. Aug. 6, 2010) (finding transitional housing provider for parolee was not a state actor where "the provision of transitional housing to former inmates under parole supervision is not a function that has traditionally been the exclusive prerogative of the state").

At this early stage, the allegations in the complaint at least suggest that Bostick is a state actor under the "public function" test because it provides housing and medical services to parolees at the direction of the state in a facility that shares some characteristics of a private prison. Because the complaint plausibly alleges Bostick is a state actor, its employees may also be considered state actors. *Harvey v. Harvey*, 949 F.2d 1127, 1132 n.14 (11th Cir. 1992) (noting that individual defendants who were employed by a "state-operated medical facility" would "unquestionably" be state employees). The Court will therefore analyze the remaining elements of Plaintiff's potential § 1983 claims.

8

*a.    Inadequate Medical Treatment Claims*

Plaintiff first suggests that Defendants did not provide him with adequate medical care at Bostick.   More specifically, Plaintiff alleges he was given the wrong medications on at least 12 occasions, and he contends he was given Depakote, a psychotropic drug, at least six times after a doctor discontinued his prescription. Compl. 9.

Prison officials have an Eighth Amendment duty to provide adequate medical treatment to the inmates under their care.   *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   This duty derives from the fact that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."   *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).   But, "[a]lthough the Supreme Court has found that the Eighth Amendment requires the state to provide adequate medical care to *incarcerated* prisoners, that obligation has not been extended to convicts who are not in custody and therefore free to find treatment on their own."   *Koch v. Wade*, No. C 15-03895 BLF (PR), 2016 WL 1381793, at *2 (N.D. Cal. Apr. 5, 2016) (citation omitted).   Thus, the state is not typically required to provide medical care to its parolees, who are generally not in custody and may seek outside care.   *See, e.g.*, *Bennett v. Newsom*, No. 23-cv-05905-JSC, 2024 WL 1559997, at *4 (N.D. Cal. Apr. 9, 2024) ("No authority of which the Court is aware provides the Eighth or Fourteenth Amendments prohibit deliberate indifference to the medical or mental health needs of a parolee, as opposed to an inmate awaiting trial or a convicted prisoner.").

9

Some courts, however, have recognized an exception to this general rule where the individual is still under restrictions that prevent him from obtaining outside medical care. *See, e.g.*, *McNair v. Harlem Hosp. Med. Dir.*, 19-CV-0203 (CM), 2019 WL 2176299, at *2 (S.D.N.Y. May 17, 2019) (collecting cases); *Giddings v. Joseph Coleman Ctr.*, 473 F. Supp. 2d 617, 623 (E.D. Pa. 2007) (finding that Eighth Amendment deliberate indifference standard applied to parolee who was confined to halfway house by state board of pardon and parole and was "completely dependent on the Center for all of his basic needs").  The Court cannot say at this early stage whether this case falls within this exception.  The nature of Plaintiff's "confinement" to Bostick is unclear, and the state may have assumed some duty to provide him with medical care given that they assigned him to a skilled nursing facility from which he may not have been free to leave.  For purposes of preliminary screening, the Court will thus assume that Plaintiff's allegations could give rise to constitutional claims.[4]

Plaintiff does not identify which individual made the medication errors in this case; rather, he suggests Defendant Mitchell is liable for these errors because she failed to properly staff Bostick.  Compl. 9.  These allegations fail to state a § 1983

---

[4]  The courts that allow a probationer or parolee to raise a claim concerning the adequacy of his medical care differ as to whether such claims arise under the Eighth or Fourteenth Amendments. *Compare, e.g.*, *Giddings*, 473 F. Supp. 2d at 623 (finding that parolee's "status was akin to that of a convicted person punished by incarceration" and therefore Eighth Amendment applied) *with McCamey v. Am. Behavioral Health Sys., Inc.*, No. 2:19-cv-00812-RBL-JRC, 2020 WL 3848051, at *3 (W.D. Wash. May 20, 2020) (noting that "the law is unclear regarding the standard that applies when a convicted prisoner is serving community supervision" and applying "more favorable" Fourteenth Amendment standard).  Plaintiff appears to rely on the Eighth Amendment in his complaint, and the Eleventh Circuit standard for deliberate indifference in the context of a medical claim is the same whether the claim arises under the Eighth or Fourteenth Amendments.  *Ireland v. Prummell*, 53 F.4th 1274, 1287 n.4 (11th Cir. 2022); *Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017).

claim.    "A supervisor may be liable for the unconstitutional acts of his subordinates when he personally participates in those acts or when a causal connection exists between his actions and the constitutional deprivation."    *Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023).    A causal connection can be established if

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

*Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (alterations in original). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."    *Id.* (quoting *Doe v Sch. Bd. of Broward Cnty.*, 604 F. 3d 1248, 1266 (11th Cir. 2010)).

In this case, though Plaintiff attributes the medication errors to Defendant Mitchell's "failure to hire enough staff[,]" Compl. 9, he does not describe a history of similar medication errors involving other Bostick residents, allege any facts to support his theory that Defendant Mitchell deliberately and improperly understaffed the facility, or clearly explain how the alleged understaffing caused the medication errors.    *See Piazza v. Jefferson Cnty.*, 923 F.3d 947, 958 (11th Cir. 2019) (prisoner failed to state supervisory liability claim where he failed to "point to other instances" of unconstitutional conduct or allege any facts concerning the policies or customs that led to constitutional violations); *see also Ireland*, 53 F.4th at 1291-92 (observing that a plaintiff cannot rely on a general policy of understaffing but must show that

defendant deliberately intended to understaff a facility to establish deliberate indifference).    Plaintiff similarly fails to allege facts sufficient to show that Defendant Mitchell directed any individual to act unlawfully or knew someone would do so and failed to stop them.    Plaintiff therefore fails to allege a colorable supervisory liability claim against Defendant Mitchell regarding the medication errors, and any such claims should be dismissed without prejudice.

### b.    *Forced Medication Claims*

Plaintiff also alleges that Defendants Leo and Mitchell forced him to take Depakote unnecessarily and for the purpose of using the drug as a chemical restraint. Compl. 6-8.    These claims could implicate Plaintiff's rights under the Eighth and/or Fourteenth Amendments.    *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (holding that inmate "possesse[d] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment"); *Battle v. Cent. State Hosp.*, 898 F.2d 126, 129 (11th Cir. 1990) ("[A]llegations of excessive and unnecessary medication administered after the patient's objections to the treatment implicate eighth amendment concerns.").    At this early stage, the Court cannot say that Plaintiff's claims that Defendants Leo and Mitchell were giving him unnecessary or excessive psychotropic medication against his will are frivolous.[5]    These claims shall proceed for further factual development.

---

[5]  To be clear, the Due Process Clause does not completely prohibit the involuntary administration of psychotropic drugs.  The state may "treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest[,]" so long as certain procedural requirements are met.

### c. *Retaliation Claims*

Next, Plaintiff alleges Defendants Mitchell and Leo chemically restrained him in retaliation for filing grievances. Compl. 8. Plaintiff also contends Defendant Mitchell threatened to revoke his parole if he continued to file grievances. *Id.* at 10. These allegations could give rise to First Amendment retaliation claims. **To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action.** *See, e.g.*, *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Plaintiff's allegations—when construed liberally and taken as true, as they must be at this stage—are sufficient to state a retaliation claim against Defendants Mitchell and Leo. Those claims shall proceed for further factual development.[6]

### d. *FNHRA Claims*

Plaintiff also contends Defendants Leo and Mitchell violated the FNHRA. Compl. 7-8. The FNHRA "ensures that nursing homes that receive Medicaid funding respect and protect their residents' health, safety, and dignity." *Health &*

---

*Washington*, 494 U.S. at 227-28. In *Washington*, for example, the United States Supreme Court upheld a state policy that required the decision to involuntarily medicate a prisoner to be made by a committee made up of a psychiatrist, a psychologist, and the associate superintendent of the facility. *Id.* at 229. The decision was subject to review by the superintendent, and the inmate also had the right to seek judicial review of the decision in a state court. *Id.* The Court concluded that such procedural safeguards were adequate to ensure that the prisoner's interests were considered and otherwise met the requirements of due process. *See id.* at 235.

[6] Plaintiff also briefly mentions that some unknown individual told him he could not attend a December 2023 or January 2024 medical appointment "in retaliation." Compl. 7. This allegation is far too vague to state an actionable retaliation claim. *Douglas*, 535 F.3d at 1321-22.

*Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171 (2023). The FNHRA thus contains "a litany of statutory requirements that Congress laid out for Medicaid-participant States and 'nursing facilities.'" *Id.* at 181 (quoting 42 U.S.C. § 1396a(a)(28)). The United States Supreme Court recently held that some of the provisions of § 1396r(c) of the FNHRA—the subsection that specifically details the rights of nursing facility residents—are enforceable via § 1983. *Id.* at 174 (holding that rights to be free from unnecessary chemical restraints and to certain protections concerning transfers and discharges were enforceable under § 1983). At least one other court has extended the holding of *Talevski* to encompass other rights contained in § 1396r(c) of the FNHRA because this subsection "use[s] clear rights-creating language, speak[s] in terms of the persons benefited, and ha[s] an unmistakable focus on the benefited class[.]" *Est. of Tester ex rel. Tester v. Village at Hamilton Pointe, LLC*, No. 3:24-cv-00005-MPB-CSW, 2024 WL 4433040, at *8 (S.D. Ind. Sept. 20, 2024) (quoting *Talevski*, 599 U.S. at 186)).

Plaintiff does not directly cite the portions of the FNHRA he believes are applicable to his case, but he has alleged facts that suggest at least four of the rights enumerated in 42 U.S.C. 1396r(c) are implicated by Defendants' conduct. First, Plaintiff clearly alleges that Defendants Mitchell and Leo chemically restrained him by prescribing him unnecessary psychotropic medication. This allegation could implicate Plaintiff's "right to be free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's

medical symptoms." 42 U.S.C. § 1396r(c)(1)(A)(ii). Second, Plaintiff contends Defendant Mitchell refused to allow him to visit with his fiancée on at least two occasions. Compl. 10. Under the FNHRA, nursing facilities must "permit immediate access to a resident, subject to reasonable restrictions and the resident's right to deny or withdraw consent at any time, by others who are visiting with the consent of the resident[.]" 42 U.S.C. § 1396r(c)(3)(C). Third, Plaintiff alleges Defendants Mitchell and Leo retaliated against him for filing grievances about the conditions at Bostick. Compl. 7, 10. This could implicate Plaintiff's right under the FNHRA to "voice grievances with respect to treatment or care that is (or fails to be) furnished, without discrimination or reprisal for voicing the grievances[.]" 42 U.S.C. § 1396r(c)(1)(A)(vi). There are certainly other hurdles these claims must clear as this litigation progresses; for example, it is not clear whether Bostick meets the definition of a "nursing facility" under § 1396r. But Plaintiff's allegations regarding these three claims—when considered in conjunction with *Talevksi* and *Tester*—are sufficient to raise colorable claims under the FNHRA. *See Tester*, 2024 WL 4433040, at *8 (finding claims based on several subsections of § 1396r(c) to be "presumptively enforceable under Section 1983" and therefore plausible). These three claims shall therefore proceed for further factual development.

Fourth, Plaintiff contends Defendant Mitchell "uses social security benefits to furnish her lavish lifestyle by stealing Plaintiff's funds through her cash cow manipulation[.]" Compl. 10. Section 1396r(c) provides some protection for residents who deposit their personal funds with nursing facilities. Generally,

15

nursing facilities "may not require residents to deposit their personal funds with the facility" and "must hold, safeguard, and account for such personal funds" that are deposited in accordance with statutory requirements.   42 U.S.C. § 1396r(c)(6)(A), (B).   But Plaintiff's allegation that Defendant Mitchell is somehow misusing residents' funds is factually unsupported and nothing more than speculation.   To the extent Plaintiff is attempting to bring a claim based on this subsection of the FNHRA, it should therefore be dismissed without prejudice.[7]   *Twombly*, 550 U.S. at 555.

### e.   *Conditions-of-Confinement Claims*

Plaintiff also complains about the conditions of his "confinement" at Bostick. As previously noted, it is not clear whether Plaintiff was, in fact, confined to the facility.   Assuming he was somehow detained, his allegations that the conditions of his confinement constitute cruel and unusual punishment could state claims for relief under the Eighth Amendment.   *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).

A conditions-of-confinement claim has both objective and subjective components.   *Christmas*, 76 F.4th at 1331.   To state a claim, an inmate must first show that the deprivations he suffers are objectively and sufficiently so serious or

---

[7] If Plaintiff is contending that Defendant Mitchell's alleged misappropriation of his funds violates his constitutional due process rights, he likewise fails to state an actionable § 1983 claim.   "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."   *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "Georgia provides a civil cause of action for the wrongful conversion of personal property" which "constitutes a suitable postdeprivation remedy for procedural due process violations."   *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014); *see also* O.C.G.A. § 51-10-1.   Plaintiff fails to allege that he attempted to pursue a civil action based on Defendant Mitchell's alleged misappropriation of his funds or that such a remedy is not available to him.   He therefore fails to state a due process claim concerning the loss of his personal property.

16

extreme that they amount to a denial of the "minimal civilized measure of life's necessities[.]"  *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (internal quotation marks and citation omitted).   This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage" to the inmate's future health or safety, or if "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993).   To meet the subjective standard in a prison conditions case, a plaintiff must show that the prison official acted with deliberate indifference to a serious risk of harm to the prisoner.  *Christmas*, 76 F.4th at 1331.[8]

Plaintiff's complaint, as pleaded, fails to state an actionable conditions-of-confinement claim.   The only specific allegations he cites for the proposition that the conditions of his confinement violate the Eighth Amendment are that he was exposed to the smell of urine and excrement daily because his "roommates [were] not being changed for days[,]" and he could not receive fresh air in his room because the windows were unopenable.   Compl. 5, 9.   While exposure to foul odors is undoubtedly unpleasant, Plaintiff has not alleged facts sufficient to show that this condition was objectively serious enough to rise to the level of a constitutional

---

[8]  Plaintiff specifically references the Eighth Amendment, but even if his conditions-of-confinement claims arose under the due process clause of the Fourteenth Amendment, the same standard would apply.  *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985) (holding that the "minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons" regarding the provision of "basic necessities" during detention).

violation.[9]  *See, e.g.*, *Sain v. Wood*, 512 F.3d 886, 888, 894 (7th Cir. 2008) (holding that "outdated plumbing[,]" which caused "an unpleasant odor in a cell . . . , along with the absence of any evidence of serious injury, does not amount to constitutional deprivation") *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *Williams v. McWilliams*, No. 93-3478, 1994 WL 121813, at *1 (5th Cir. Mar. 22, 1994) (unpublished opinion) (holding that inmate who "was forced to endure the foul odor caused by an incontinent prisoner in his housing unit" could not state Eighth Amendment claim absent some allegations that odor "posed a medical or sanitation hazard").

Moreover, even if Plaintiff pleaded an objectively serious condition of confinement, he fails to allege that Defendants were deliberately indifferent to it.   In this Circuit, deliberate indifference requires a plaintiff to "demonstrate that the defendant acted with 'subjective recklessness as used in the criminal law,'" by "show[ing] that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff[.]"   *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (quoting *Farmer*, 511 U.S. at 839). Plaintiff neglects to allege any specific facts that demonstrate that any named Defendant in this case was "actually, subjectively aware" that the condition of

---

[9]   Allowing an inmate to lie in his own excrement for days could certainly amount to a constitutional violation, but that is not what Plaintiff is claiming he personally experienced; he alleges only that he was exposed to foul odors.   *Cf. Brooks v. Warden*, 800 F.3d 1295, 1305 (11th Cir. 2015) (finding Eighth Amendment violation where inmate had been "forced to lie in direct and extended contact with his own feces without any ability to clean himself, while confined to a hospital bed in maximum security constrains").

Plaintiff's room posed a substantial risk of serious harm to Plaintiff. *Id.* As such, Plaintiff fails to state an actionable conditions-of-confinement claim, and those claims should be dismissed without prejudice.

### f. *Claims Regarding Searches*

Plaintiff next states that Defendant Mitchell authorized safety officers at Bostick to search residents illegally, but he does not describe the nature of these searches or seizures or state that he was ever subjected to one. Compl. 9. Without additional supporting facts, Plaintiff cannot state an actionable claim. *Iqbal*, 556 U.S. at 678.[10] These claims should also be dismissed without prejudice.

### g. *Equal Protection Claims*

Plaintiff also mentions that Defendants discriminated against him based on his race. Compl. 10. Such claims may arise under the Equal Protection Clause of the Fourteenth Amendment, which provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "The Equal Protection clause is 'essentially a direction that all persons similarly situated should be treated alike[.]'" *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1226 (11th Cir. 2023) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Thus, when there is no direct evidence of discrimination, a plaintiff must generally allege that similarly situated persons—or "comparators"—have been

---

[10] The Court also notes that Plaintiff may have waived some of his rights as a condition of his parole. *See, e.g.*, *United States v. Stewart*, 213 F. App'x 898, 899 (11th Cir. 2007) (holding that warrantless search of Georgia parolee's property did not violate Fourth Amendment where condition of parole required parolee "to submit to a search 'at any time' without a warrant").

treated differently through state action to state an equal protection claim.  *Williams v. Sec'y for Dep't of Corr.*, 131 F. App'x 682, 685-86 (11th Cir. 2005); *see also Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).

In this case, the complaint does not set forth any direct evidence of racial discrimination, which requires "the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021).  Plaintiff also fails to allege that any similarly situated person was treated differently than him.  Plaintiff therefore fails to state an actionable equal protection claim.  *See, e.g.*, *Williams*, 131 F. App'x at 687 (affirming dismissal of equal protection claims where plaintiff "failed to allege facts showing that any other specific inmate" had been treated differently than plaintiff).  Any such claims should be dismissed without prejudice.

### h.    *Section 1983 Claims against Bostick*

Plaintiff also appears to name Bostick itself as a Defendant in this action. Compl. 4.  To the extent Plaintiff intends to raise § 1983 claims against this facility, those claims should be dismissed without prejudice.  Even assuming Bostick is an entity that contracts with the state to provide services to parolees and is otherwise subject to suit under § 1983, it cannot be held liable for the constitutional violations of its employees based on vicarious liability or *respondeat superior*.  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).  To impose § 1983 liability on a contractor, a plaintiff must instead establish that the alleged constitutional deprivation occurred

as a direct result of the contractor's official policies or customs.  *See, e.g.*, *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) (holding that "the *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates").  This is because the private contractor in these circumstances "becomes the functional equivalent of a municipality under § 1983." *Groover v. Israel*, 684 F. App'x 782, 786 (11th Cir. 2017).

In the context of § 1983 liability, "[a] policy is a decision that is officially adopted by the [entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [entity]," and "[a] custom is a practice that is so settled and permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).  But a plaintiff cannot "rel[y] on his experience alone to prove a policy or custom."  *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1312 (11th Cir. 2011).  Indeed, "it is established law that proof of a single incident of unconstitutional activity is not sufficient to demonstrate a policy or custom for purposes of § 1983 liability."  *Ireland*, 53 F.4th at 1290.  "Rather, a plaintiff must establish the existence of a pattern of similar violations" or "show that the policy itself is unconstitutional" to state an actionable claim.  *Id.* (quoting *Craig*, 643 F.3d at 1310-11).

In this case, Plaintiff's complaint is based solely upon his own experience at Bostick; he does not identify any other specific incidents where a particular policy or custom caused violations of other residents' constitutional rights.  At most, Plaintiff

21

surmises that "90% of all residents at Bostic[k] . . . are on Depakote[.]"  Compl. 9. But Plaintiff has not provided any facts to support this conclusory statement or explain why this fact—standing alone—evidences an unconstitutional policy or custom that led to the deprivation of his rights.   For example, these individuals may have been properly prescribed the drug.   Because Plaintiff fails to allege facts sufficient to show that Bostick maintained any policy or custom that caused the denial of Plaintiff's constitutional rights, he fails to state an actionable § 1983 claim. *See, e.g.*, *Ireland*, 53 F.4th at 1290 (affirming summary judgment in favor of contractor where plaintiff "d[id] not attempt to show that . . . purported policies or customs *caused* any constitutional violation"); *Roy v. Ivy*, 53 F.4th 1338, 1351 (11th Cir. 2022) (affirming summary judgment in favor of contractor where inmate "did not present evidence of another instance where [the contractor's] alleged policy or custom of delaying medical treatment exacerbated an inmate's medical condition"); *Groover*, 684 F. App'x at 787 (dismissing § 1983 claims against contractor where plaintiff "never alleged that [the contractor] had a custom or policy that constituted deliberate indifference to inmates' or detainees' constitutional rights").   Thus, any § 1983 claims against the entity Bostick should be dismissed without prejudice.

2.    *Claims under the ADA and Rehabilitation Act*

Finally, Plaintiff alleges that Defendants Leo and Mitchell violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701, *et seq.*   The Court presumes Plaintiff bases these claims on his allegations that he was "discriminated against . . .

on the basis of his disability[.]" Compl. 10. The only specific example Plaintiff gives of this type of discrimination is that some exit doors at Bostick, including fire exit doors, are inaccessible to individuals in wheelchairs. *Id.* at 5. Because there is no individual liability under either the ADA or the RA, the Court assumes Plaintiff intended to raise these claims against Bostick alone. *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005). The Court also assumes that Plaintiff intended to bring these claims pursuant to either Title II or Title III of the ADA and Section 504 of the RA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a "public entity" as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(A), (B). State agencies and prisons are "public entities" which may be sued under Title II of the ADA. *United States v. Georgia*, 546 U.S. 151, 154 (2006).

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A skilled nursing facility may be

considered a place of public accommodation subject to Title III of the ADA.   *See, e.g.,*

*Hubbard v. Twin Oaks Health & Rehab. Ctr.*, 408 F. Supp. 2d 923, 929 (E.D. Cal.

2004) (finding it "undisputed" that skilled nursing facility was a place of public

accommodation within the meaning of Title III).   Plaintiff's Title III claims that some

doors at Bostick are not wheelchair-accessible appear to fall specifically under

§ 12182(b)(2)(A)(iv), which prohibits "a failure to remove architectural barriers . . . in

existing facilities . . . where such removal is readily achievable[.]"

Section 504 of the RA provides, "No otherwise qualified individual with a

disability . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance[.]"   29 U.S.C. § 794(a).

When disability discrimination claims are based on the existence of architectural

barriers, "the rights and remedies are exactly the same" whether the case is brought

under the RA or the ADA, and "case law interpreting one statute can be applied to

the other."   *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 288-89 (5th Cir. 2005) (en

banc); *see also Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000); *Montano v.

Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3d 1120, 1131-32 (C.D. Cal. 2015)

(finding that skilled nursing facility violated ADA, RA, and other laws by failing to

widen doorways to accommodate plaintiff's wheelchair, among other things).

The Court assumes without deciding that Plaintiff is a qualified individual

with a disability, given his allegation that he requires a wheelchair for mobility.   At

this early stage, however, it is impossible to determine whether Bostick is more akin

24

to a prison or a skilled nursing facility and whether it is a public or private entity.[11] It is also unclear whether Bostick received federal financial assistance and would therefore be liable under the RA. The Court does not have to decide these issues, however, because Plaintiff fails to state an actionable disability discrimination claim regardless of which provisions apply.

First, to the extent Plaintiff seeks injunctive relief for the alleged violations of the ADA and the RA, his release from Bostick moots such claims. *McKinnon*, 745 F.2d at 1363. Plaintiff's claims for injunctive relief under the ADA and the RA should therefore be dismissed without prejudice. And because "injunctive relief is the only remedy available" for the violation of the architectural barriers provision in 42 U.S.C. § 12182(b)(2)(A)(iv), Plaintiff's claims under Title III should be dismissed altogether. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1231 (11th Cir. 2021) (citing 42 U.S.C. § 12188) (affirming dismissal of Title III architectural barrier claims for lack of standing because plaintiff pursued only injunctive relief).

Plaintiff also seeks monetary damages under the ADA and the RA. Accordingly, Plaintiff "must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of deliberate indifference." *Christmas*, 76 F.4th at 1333 (quoting *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022)). To establish deliberate indifference in this

---

[11] In the Eleventh Circuit, a private corporation that contracts with a state or local government to provide prison services is not considered a "public entity" within the meaning of the ADA. *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) (holding that private prison management corporation that operated state prison was not a "public entity" for purposes of the ADA).

context, Plaintiff "must demonstrate that an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf had actual knowledge of discrimination in the entity's programs and failed adequately to respond." *Silberman v. Miami Dade Trans.*, 927 F.3d 1123, 1134 (11th Cir. 2019) (cleaned up). Plaintiff fails to clearly allege facts suggesting that any official with authority at Bostick actually, subjectively knew of the alleged accessibility issues and failed to take corrective action; he simply states he "observed" some inaccessible doors. Compl. 5. Moreover, Plaintiff does not provide any specifics regarding why he believes the doors are inaccessible in violation of federal law. Plaintiff therefore fails to state a claim for damages under Title II of the ADA or the RA, and these claims must be dismissed without prejudice. *Christmas*, 76 F.4th at 1333 (affirming dismissal of ADA and RA damages claims where plaintiff alleged "neither that the Jail knew about [prison official's] alleged discrimination nor that it failed to respond adequately").

## IV.   Conclusion

For the foregoing reasons, the following § 1983 claims shall proceed for further development: (1) claims that Defendants Leo and Mitchell forced Plaintiff to take unnecessary medication in violation of the Constitution; (2) claims that Defendants Leo and Mitchell retaliated against Plaintiff in violation of the Constitution and the FNHRA; (3) claims that Defendants Leo and Mitchell chemically restrained Plaintiff in violation of the FNHRA; and (4) claims that Defendant Mitchell denied Plaintiff visitation in violation of the FNHRA. It is **RECOMMENDED**, however, that

Plaintiff's remaining claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff made colorable claims against Defendants Mitchell and Leo, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure

to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED** this 6th day of January, 2025.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE